STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-892


BILLY RAY WOODARD

VERSUS

TOWN OF COLFAX

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION -DISTRICT # 2
PARISH OF RAPIDES, NO. 07-06773
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**


Amy, J., concurs in part and dissents in part, and assigns written reasons.


**Joseph Yuri Beck**
**Hunter & Morton**
**P. O. Box 11710**
**Alexandria, LA 71315**
**Counsel for Claimant/Appellee:**
    **Billy Ray Woodard**

**Randall B. Keiser**
**D. Heath Trahan**
**Keiser Law Firm**
**P. O. Box 12358**
**Alexandria, LA 71315-2358**
**Counsel for Defendant/Appellant:**
    **Town of Colfax**

**PICKETT, J.**

The defendant, Town of Colfax (Colfax) appeals a ruling by a Workers' Compensation Judge (WCJ) finding that the claimant, Billy Woodard, suffered a disabling accident in the course and scope of his employment with Colfax and awarding the claimant the following: (a) supplemental earnings benefits, with a zero earnings capacity, beginning on the date Mr. Woodard discontinued working at the City of Colfax in July of 2007, until September 27, 2007, and (b) temporary total disability beginning on September 27, 2007, and continuing through present. The WCJ also ordered Colfax to authorize and pay for the discogram and repeat lumbar MRI recommended by Dr. George R. Williams and, if the he believes that the further testing continues to support the recommended surgery, that Colfax shall approve the lumbar surgery he recommended. In addition the claimant was awarded penalties, attorney's fees and interest and costs.

On appeal Colfax alleges that the WCJ erred in the following: (1) in finding the claimant is disabled, (2) in finding that more diagnostic testing is necessary, (3) in finding that, depending on the tests results, that surgery may be necessary (at the defendant's expense), and (4) in awarding penalties and attorney's fees.

The claimant answered the appeal seeking an increase in attorney's fees at the trial level and additional attorney's fees for the defense of this appeal. The defendant filed a motion seeking to have the claimant's answer to appeal dismissed as untimely. We affirm the ruling of the Workers' Compensation Judge and dismiss the claimant's answer to appeal as untimely.

1

## FACTS

It was stipulated that on January 30, 2007, the claimant injured his low back lifting a storm grate during his employment with the Town of Colfax's Street Department. The following day, the town referred Mr. Woodard to Dr. Jay Piland, the town physician. Dr. Piland treated Mr. Woodard conservatively, for what he diagnosed as a lumbar strain, for the next seven months. Treatment included rest, medication and epidural steriod injections. According to Mr. Williams, his condition worsened during that time, with his back pain extending into his left leg, down to his foot. Mr. Woodard testified that medication failed to totally relieve his pain. An MRI performed during this time period revealed a bulging disc at L4/L5 and, depending on what doctor one queried, several other abnormalities.

Toward the end of July, Mr. Woodard and his supervisor, Derrian Sapp, had a disagreement over the claimant's working conditions and over his stopping at his house to get medicine. As a result, Mr. Sapp sent Mr. Woodard home on July 26, 2007, and Mr. Woodard was fired the next day.

Mr. Woodard's condition did not improve and on September 27, 2007, he consulted Dr. Ray Williams, an orthopaedic specialist in Opelousas, who is now Mr. Woodard's treating physician. Dr. Williams examined Mr. Woodard and read the MRI which had been previously done. In his opinion the MRI revealed "congenital stenosis at L3/L4 and L4/L5 with small disc protrusion and annular tear." He agreed with Dr. Piland that Mr. Woodard could not work and started him on physical therapy and home stretching exercises. These treatments did not help.

The claimant was then referred to Dr. Frazer Garr for a second medical opinion. Dr. Garr examined Mr. Woodard on October 29, 2007. In his opinion, Mr. Woodard

was suffering from a vascular necrosis of both hips, but he was close to maximum medical improvement from his back injury with a residual impairment rating of 5%. Dr. Garr opined that surgery was not necessary and recommended that Mr. Woodard undergo a Functional Capacity Evaluation (FCE). On November 8, 2007, Mr. Woodard returned to Dr. Williams, who agreed with Dr. Garr about the FCE and ordered the test. In February 2008, Dr. Williams, recommended decompression and fusion at the L4/L5 level.

Next, Mr. Woodard was referred to Dr. Gregory Gidman at the Acadiana Center for Orthopedic and Occupational Medicine for an Independent Medical Examination (IME). Dr. Gidman performed the exam on April 1, 2008, and concluded Mr. Woodard had oly sustained a lumbosacral strain (he did agree that Mr. Woodard suffered fro bilateral avascular necrosis). He also reviewed the MRI done in May of 2007, and opined the following:

> There is no desiccation. The disc spaces are well preserved at all levels. At L4-5, there is a mild bulging with a small protrusion to the left. The L5-S1 level shows some mild facet arthropathy. There is no herniation or acute changes at any level.

This was the most conservative interpretation of Mr. Woodard's MRI by any health care professional. In fact, Dr. Gidman opined that "the examinee's MRI findings are compatible with his age and the labor he has done for years." Dr. Gidman concluded that Mr. Woodard's only "pathological disease" is bilateral avascular necrosis not related to his accident. He further stated that in his opinion Mr. Woodard had reached MMI; that he has a 3-5% whole body impairment; and that could resume work at medium level activities as established by his FCE.

Next, Mr. Woodard was referred to Dr. Mark F. McDonnell, a spine specialist in Lafayette for another opinion on May 21, 2008. Dr. McDonnell diagnosed Mr.

Woodard with "post traumatic axial pain syndrome of the lumbar spine." In his recommendations, Dr. McDonnell states:

3. . . . I believe that the low back pathology is related to some type of lumbar disc injury. Decompression alone is not going to help him.

4. I would recommend that the patient have a pre-operative discogram of the lumbar spine. The MRI report suggests that L3-4 is normal. It appears, therefore that at least the L3-4, L4-5 and L5-S1 discs should be tested. In addition there is a question whether the L5-S1 disc is normal. If in fact it is normal, then the facet findings on the MRI at L5-S1could possibly be observed. Of course, they would image better on a post discography CT scan, and a decompression of the foramen and lateral recesses at L5-S1 may be required.

5. If the discogram does show a good study with a normal control, and if it shows only concordant pain with annular tear at L4-5, then I would agree with a posterior instrumentation fusion at L4-5—assuming that the agrees to quit smoking.

In sum, two physicians, Drs. Garr and Gidman, did not believe that Mr. Woodard was in need of further medical treatment, especially surgery, while the other three physicians who examined and/or treated Mr. Woodard, Drs. Piland, McDonnell and Williams all agreed that he had sustained a work related injury to his lower back which required further medical treatment, i.e. testing and some type of surgery.

## LAW AND DISCUSSION

In *Monceaux v. R & R Construction, Inc.*, 05-533, pp. 5-7 (La.App. 3 Cir. 12/30/05), 919 So.2d 795,798- 801, *writs denied*, 06-585 (La. 5/5/06), 927 So.2d 325, 06-636 (La. 5/5/06), 927 So.2d 317, we reviewed the standard of review and the claimant's burden of proof in a workers' compensation case:

In *Dean v. Southmark Construction*, 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117, the supreme court discussed the standard of review in workers' compensation cases:

4

In worker's compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC's findings of fact is the "manifest error-clearly wrong" standard. *Brown v. Coastal Construction & Engineering, Inc.*, 96-2705 (La.App. 1 Cir. 11/7/97), 704 So.2d 8, 10, (citing *Alexander v. Pellerin Marble & Granite*, 93-1698, pp. 5-6 (La.1/14/94), 630 So.2d 706, 710). Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. *Alexander*, 630 So.2d at 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir.2003), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Robinson*, 865 So.2d at 105. The determination of whether injury occurred in the course and scope of employment is a mixed question of law and fact. *Winkler v. Wadleigh Offshore*, Inc., 01-1833 (La.App. 4 Cir. 4/24/02), 817 So.2d 313, 316 (citing *Wright v. Skate Country, Inc.*, 98-0217 (La.App. 4 Cir. 5/12/99), 734 So.2d 874).

Recently, this court addressed a claimant's burden in proving the he/she suffered a work-related accident:

In order to recover workers' compensation benefits, an injured employee must prove by a preponderance of the evidence that he suffered a "personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031(A). An "accident" is defined as an "unexpected or unforseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1).

The Louisiana Supreme Court, in *Bruno v. Harbert International Inc.*, 593 So.2d 357, 361 (La.1992), expounded on what proof will satisfy an employee's burden in proving a work-related injury:

A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979); Malone and Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation,§ 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, *supra*; *Nelson v. [Roadway Express, Inc.*, 588 So.2d 350 (La.1991)]. Corroboration may also be provided by medical evidence. *West, supra*.

In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." *West*, 371 So.2d at 1147; *Holiday v. Borden Chemical*, 508 So.2d 1381, 1383 (La.1987). The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. *Gonzales v. Babco Farm, Inc.*, 535 So.2d 822, 824 (La.App. 2d Cir.), *writ denied*, 536 So.2d 1200 (La.1988) (collecting cases).

As stated in *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations omitted):

> When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

6

*Bigge v. The Lemoine Co.*, 04-1191, pp. 2-4 (La.App. 3 Cir. 3/2/05), 896 So.2d 269, 271-72.

In his reasons for his ruling, the WCJ stated:

> In Mr. Woodard's case, there is absolutely no showing by the Town of Colfax that it ever had available for Mr. Woodard a job that ever met any restrictions placed upon him by Dr. Piland. Mr. Woodard has shown by a preponderance of clear and convincing evidence based upon the objective findings in the medical testing and the opinions suggested in the medical records of the examining physicians other than [Drs.] Gaar and Gidman that he is unable to work and he is entitled to temporary/total disability benefits.

After examining the record in its entirety, including both lay and professional testimony, and the documentary evidence, we cannot say that the WCJ was manifestly erroneous in his findings regarding Mr. Woodard's disability and his need for further testing and treatment.

Inasmuch as Colfax had notice of Mr. Woodard's injury and knowledge that he was under a doctor's treatment and on medication, we find no error in the award of penalties and attorney's fees.

As to Mr. Woodard's answer to appeal, we agree with the appellant, the answer was filed untimely. Hence, we will not consider the arguments raise therein.

Accordingly, for the reasons stated above, we affirm the judgment of the WCJ. We dismiss the answer to appeal as untimely. All costs of this appeal are taxed against the appellant, Town of Colfax.

**AFFIRMED.**

NUMBER 09-892

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

BILLY RAY WOODARD

VERSUS

TOWN OF COLFAX

AMY, J., concurring in part and dissenting in part.

I agree with the majority that an affirmation is required as to the findings of disability, diagnostic testing, and penalties and attorney fees. However, I find merit in the employer's assignment of error which questions that portion of the judgment ordering that: "If the treating physician believes that the further testing continues to support the recommended surgery, the City of Colfax shall approve the lumbar surgery recommended by Dr. Williams." In my opinion, this order was premature as the testing had not yet been completed and pre-judged what may be medically necessary. Accordingly, I would reverse the judgment in this limited regard, leaving future events to determine the necessity of such issues.