PER CURIAM.
| ,We granted certiorari in this case to determine whether the court of appeal erred in finding annual and sick leave is not included within the calculation of an hourly employee’s average weekly wage for purposes of determining the appropriate workers’ compensation benefit. For the reasons that follow, we conclude the court of appeal did not err in holding such benefits were not included, and therefore affirm the judgment of the court of appeal.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The underlying facts of this matter are undisputed. Ellis Hargrave was employed by the State of Louisiana, through the *1103 Department of Transportation and Development (“DOTD”), as a mobile machine operator. In June 2005, Mr. Hargrave was injured when he slipped and fell in the course and scope of his employment. At that time, he was earning a bi-monthly wage of $1,095.76 for eighty hours of work, or $547.88 for forty hours per week (Monday through Friday). In the four weeks prior to his accident, Mr. Hargrave used thirty-two hours of annual leave, and eight hours of sick leave. On April 12, 2006, DOTD began paying Mr. Hargrave 12weekly disability benefits in the amount of $379.87, based on a reported average weekly wage of $569.80.
Subsequently, Mr. Hargrave filed a disputed claim for compensation with the Office of Workers’ Compensation (“OWC”), seeking both medical and disability benefits, plus attorney fees, penalties, costs, and interest. Essentially, he argued DOTD failed to include an amount for the value of paid leave, based on the twenty-six weeks of work prior to his accident under La. R.S. 23:1021(12)(d).
DOTD reconvened, seeking a credit for overpayment of benefits. DOTD contended that it had calculated Mr. Hargrave’s average weekly wage under La. R.S. 23:1021(12)(a)(i), using his income at the time of the claim, as opposed to his income at the time of the accident.
The matter proceeded to a trial on the merits. At trial, DOTD stipulated that Mr. Hargrave was entitled to temporary total disability benefits, but disputed the amount of those benefits. DOTD also stipulated that it owed penalties based on its failure to pay certain benefits timely.
DOTD presented the testimony of its current adjuster, Lisa Stanford. Ms. Stanford testified DOTD overpaid Mr. Hargrave based on his reported average weekly wage at the time of disability, as opposed to his average weekly wage at the time of the accident. Ms. Stanford also admitted that DOTD underpaid certain mileage sought by Mr. Hargrave, and was late with payments on certain medical bills. She explained she could not verify medical services on the unpaid mileage, and the medical bills were re-processed to verify the service.
Mr. Hargrave testified he sought mileage for medical services provided during his treatment on the days which DOTD refused to pay, and he sought emergency room medical services for his work-related injury, which DOTD had not paid.
IsDOTD also offered the testimony of Mary Kay McRae, who is employed as a Human Resources Manager for DOTD. Ms. McRae testified Mr. Hargrave worked forty hours per week for the four weeks immediately prior to the accident, and did not work any overtime. She also explained the paid annual and sick leave for hours not worked during the four weeks are included in the employee’s bi-monthly pay, if the employee had adequate accumulated leave balances. According to the evidence submitted by DOTD, Mr. Har-grave used thirty-two hours of annual leave, and eight hours of sick leave during the four-week period prior to his accident.
At the conclusion of trial, the OWC rendered judgment in favor of Mr. Hargrave, awarding him temporary total disability benefits in the amount of $424.28, beginning from January 31, 2006, subject to a credit for all weekly compensation benefits paid by DOTD. In arriving at this figure, the OWC added $103.54 to Mr. Hargrave’s actual weekly wages of $547.88, representing the value of annual and sick leave benefits.[1] The addition of these fringe *1104 benefits had the effect of increasing his average weekly wage to $651.42, thereby resulting in a weekly compensation rate of $424.28. The OWC also ordered DOTD to pay penalties for certain underpayments, plus late payments, including $196.72 for mileage, $8,000 in penalties, and $18,900 in attorney fees and costs, including expenses in the amount of $641.31.
Both DOTD and Mr. Hargrave appealed. In a split decision, a five-judge panel of the court of appeal reversed in part and affirmed in part. Hargrave v. State of Louisiana Through Department of Transportation and Development, 09-818 (La.App. 3 Cir. 4/7/10), 35 So.3d 437.
|4The majority opinion concluded the OWC erred in including the value of Mr. Hargrave’s annual and sick leave in the calculation of his average weekly wage. Citing Ivory v. Southwest Developmental Center, 07-1201 (La.App. 3 Cir. 3/5/08), 980 So.2d 108, the majority determined that when a claimant is paid on an hourly basis, and his average weekly wage is calculated using La. R.S. 23:1021(12)(a)(i), fringe benefits in the form of annual and sick leave are already included in that calculation. The majority found Mr. Har-grave’s correct average weekly wage was $547.88, resulting in a compensation rate of $365.25. The majority further concluded DOTD overpaid Mr. Hargrave’s weekly benefits based on an error in the calculation of his weekly wage, and it was entitled to an offset of $2,703.07 under La. R.S. 23:1206.[2]
Finally, the court affirmed the OWC’s award of attorney fees in the amount of $18,900, and awarded an additional $1,500 for the appeal. It also concluded the OWC erred in failing to award interest, and amended the judgment to award legal interest beginning on the date compensation was due, and also awarded interest on the penalties and attorney fees beginning on the date of the judgment.
Two judges dissented from the portion of the judgment finding Mr. Hargrave’s sick and annual leave should not be included in the calculation of his average weekly wage. These judges would have affirmed the OWC’s inclusion of these benefits in the calculation of Mr. Hargrave’s average weekly wages.
Upon Mr. Hargrave’s application, we granted writs to review the correctness of the court of appeal’s judgment. Hargrave v. State of Louisiana Through Department of Transportation and Development, 10-1044 (La.9/17/10), 45 So.3d 1034. The sole issue presented for our consideration is whether the value of an employee’s fringe benefits should be included in the calculation of the employee’s average weekly wage.[3]
DISCUSSION
Prior to 1999, the law was silent regarding whether fringe benefits could be in- *1105 eluded in the calculation of an employee’s average weekly wage for purposes of determining workers’ compensation benefits. Nonetheless, several appellate decisions held any remuneration, including fringe benefits such as accrued leave, was used to enhance an employee’s average weekly wage. See Burns v. St. Frances Cabrini Hosp., 02-518, p. 2 (La.App. 3 Cir. 10/30/02), 830 So.2d 572; Moses v. Grambling State Univ., 33-185 (La.App. 2 Cir. 5/15/00), 762 So.2d 191, writ denied, 00-1769 (La.9/22/00), 768 So.2d 1285; Transp. Ins. Co. v. Pool, 30,250 (La.App. 2 Cir. 5/13/98), 714 So.2d 153, writ denied, 98-1566, 98-1616 (La.9/25/98), 725 So.2d 486; Leson Chevrolet, Inc. v. Tricke, 98-1328 (La.App. 5 Cir. 9/28/99), 742 So.2d 1047; and GNB, Inc. v. Jones, 29,779 (La.App. 2 Cir. 8/20/97), 699 So.2d 466.
In 1999, the legislature amended La. R.S. 23:1021 to add subsection(10)(f),[4] which was later redesignated as subsection (12)(f), and currently provides:
| fi(f) Income tax. In the determination of “wages” and the average weekly wage at the time of the accident, no amount shall be included for any benefit or form of compensation which is not taxable to an employee for federal income tax purposes; however, any amount withheld by the employer to fund any nontaxable or tax-deferred benefit provided by the employer and which was elected by the employee in lieu of taxable earnings shall be included in the calculation of the employee’s wage and average weekly wage including but not limited to any amount withheld by the employer to fund any health insurance benefit provided by the employer and which was elected by the employee in lieu of taxable earnings shall be included in the calculation of the employee’s wage and average weekly wage, [emphasis added]
In Sterling v. Asplundh Tree Expert Co., 03-266, p. 9 (La.App. 3 Cir. 10/1/03), 856 So.2d 125, 130, writ denied, 03-3017 (La.1/30/04), 865 So.2d 79, the court of appeal held that “[a]ny fringe benefit that an employer provides is taxable and must be included in the recipient’s pay unless that fringe benefit is specifically excluded by the law.”[5] Thus, the Sterling court concluded the OWC did not err in including paid holiday and vacation fringe benefits when calculating the claimant’s average weekly wage.
In Ivory v. Southwest Developmental Center, 07-1201 (La.App. 3 Cir. 3/5/08), 980 So.2d 108, the court of appeal addressed a situation in which the claimant used sixteen hours of paid absences during the four full weeks preceding her accident. The court reasoned that “[b]ecause these benefits are taxable when they are used, we find that they are included in Ivory’s pay and the calculation of her average weekly wage.” Ivory, 07-1201 at 6, 980 So.2d at 114. However, the court also held that the hours of leave the claimant earned during that time (but did not use) would *1106 not be included in her average weekly wage calculation.
17A contrary result was reached by the court in Clay v. Our Lady of Lourdes Regional Medical Center, Inc., 09-1219, p. 15 (La.App. 3 Cir. 6/2/10), 38 So.3d 1196, 1106. In that case, the court included in the claimant’s average weekly wage calculation the average weekly fringe benefits (paid time off and extended illness time) earned by the claimant during the four-week period prior to the injury. In rejecting the approach of the Ivory court, the Clay court stated:
There has been a tendency to misinterpret subsection (f) as requiring that a specific benefit must have been received on a check and therefore “taxed” before being considered in a claimant’s [average weekly wage]. We disagree with this interpretation because subsection (f) requires benefits to be “taxable,” not “taxed.”
Id. at 16, 38 So.3d at 1207.
In the instant case, Mr. Hargrave asks us to adopt the approach of the Clay court and include the value of the fringe benefits in the calculation of his average weekly wage. As authority for calculating the value of these benefits, Mr. Hargrave relies on the “other wages” provision of La. R.S. 23:1021(12)(d).
We find Mr. Hargrave’s reliance on La. R.S. 23:1021(12)(d) is misplaced. That statute provides:
(d) Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by the average number of days worked per week; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by the average number of days worked per week, [emphasis added]
[/There is no evidence in the record that Mr. Hargrave was “employed on a unit, piecework, commission, or other basis.” To the contrary, the record reveals he was paid on an hourly basis. Therefore, the calculation of Mr. Hargrave’s average weekly wage is governed by La. R.S. 23:1021(12)(a)(i), which provides, in pertinent part:
If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater.
Following the approach of the Ivory court, any annual or sick leave used by Mr. Hargrave during the four weeks prior to his accident would be included in the calculation of his average weekly wage. However, Mr. Hargrave argues the fallacy of this approach is that La. R.S. 23:1021(12)(a)(i) focuses on the “average actual hours worked in the four full weeks preceding the date of the accident” [emphasis added]. By referring to “actual hours worked” and “four full weeks,” Mr. Hargrave asserts the legislature did not intend to include annual or sick leave within the four full weeks calculation.
We recognize there is some appellate jurisprudence supporting Mr. Hargrave’s position. See, e.g., Doucet v. Crowley Manufacturing, 96-1638 (La.App. 3rd *1107 Cir.4/30/97), 693 So.2d 328 (holding an average weekly wage calculation should not include a vacation week or time when the factory was closed and the employee worked a “light schedule”). Nonetheless, under the facts of the instant case, we find no need to resolve this issue.
La. R.S. 23:1021(12)(a)(i) provides the average weekly wage is calculated based on the “average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater” [emphasis added]. In using this language, the legislature indicated its intent to base the calculation of an employee’s 19average weekly wage on the employee’s ordinary earning capacity, not actual hours being worked at the time of the injury. See Malone & Johnson, 14 Louisiana Civil Law Treatise: Workers’ Compensation Law and Practice § 322, p. 82 (2002 ed.). In the case at bar, the testimony of Ms. McRae, DOTD’s Human Resources Manager, indicates Mr. Hargrave generally worked a normal forty-hour week. According to Ms. McRae, he did not work any overtime during the four weeks preceding his accident. Because Mr. Har-grave did not work more than forty hours during the four weeks prior to his accident, his average weekly wage is calculated based on his normal forty-hour week, and there is no need to look to the actual hours worked.
This analysis also reveals why annual and/or sick leave used during the four-week period is largely transparent for purposes of calculating Mr. Hargrave’s average weekly wage. It is true these hours, when used by Mr. Hargrave to satisfy the normal forty-hour work requirement, may be considered a “taxable benefit” for purposes of La. R.S. 23:1021(12)(f). Nonetheless, for purposes of the instant facts, they do not result in Mr. Hargrave actually working beyond forty hours, and therefore do not impact the calculation of his average weekly wage beyond the base forty-hour calculation.
Similarly, we do not find the annual and sick leave benefits accrued, but not used, during the four-week period should be factored into the calculation of Mr. Har-grave’s average weekly wage. As observed by the Clay court, it can be said such benefits are potentially “taxable” for purposes of La. R.S. 23:1021(12)(f), even though they are not actually taxed until used. However, we do not believe the legislature intended such an expansive use of the word “taxable.” As discussed in | ^Malone & Johnson, 14 Louisiana Civil Law Treatise: Workers’ Compensation Law and Practice § 324 at 91-92, the courts, in determining which types of remuneration should be included for compensation purposes, looked to those forms which provide a real and reasonably definite economic gain to the employee, such as bonuses, waitress tips, meals, board, lodging, laundry, or other similar services under the contract of employment. The common thread among all these forms of remuneration is that they provide an immediate benefit to the employee, as opposed to a future benefit. Against this jurisprudential backdrop, it is reasonable to assume the legislature intended that “taxable benefits” would refer to those benefits which are actually taxed upon being received by the employee, and not benefits which are only potentially taxable at some uncertain point in the future.[6]
*1108 In summary, we conclude the court of appeal correctly found the OWC erred in including annual and sick leave to increase Mr. Hargrave’s average weekly wage. The annual and sick leave actually used by Mr. Hargrave during the four weeks preceding the accident became taxable when used, and already were included in the calculation of his average weekly wage. To the extent the annual and sick leave hours were merely accrued and not used, these benefits are not taxable, and therefore should not included in the determination of the average weekly wage under La. R.S. 23:1021(12)(f).
|nDECREE
For the reasons assigned, the judgment of the court of appeal reducing Ellis Har-grave’s weekly indemnity benefits from $424.28 to $365.25, and granting an offset to the State of Louisiana, Department of Transportation and Development for amounts overpaid, is affirmed.

. The OWC determined that in the twenty-six weeks prior to his accident, Mr. Hargrave *1104 used 196.5 hours of paid leave (164.5 hours of annual leave, and 32 hours of sick leave), and multiplied that figure by $13.70 (Mr. Har-grave’s hourly wage), equaling $2,692.05. The OWC then divided this figure by twenty-six to arrive at $103.54 as the value of Mr. Hargrave's weekly fringe benefits.

. La. R.S. 23:1206 provides,
Any voluntary payment or unearned wages paid by the employer or insurer either in money or otherwise, to the employee or dependent, and accepted by the employee, which were not due and payable when made, may be deducted from the payments to be made as compensation.

. Neither party sought review of the court of appeal's judgment insofar as it affirmed the OWC's award of attorney fees, and awarded additional attorney fees and interest. Accordingly, this portion of the court of appeal's judgment is final, and these issues are not before us.

. Subsection (10)(f) was added to exclude from the calculation of a claimant’s average weekly wage those "fringe benefits” that are not taxable to an employee for federal income tax purposes.” In 2001, the legislature amended La. R.S. 23:1021(10)© to include language "including but not limited to any amount withheld by the employer to fund any health insurance benefit provided by the employer and which was elected by the employee in lieu of taxable earnings shall be included in the calculation of the employee’s wage and average weekly wage” following "average weekly wage.”

. The court in Sterling explained that excluded benefits include items such as accident and death benefits, group-term life insurance coverage, meals, and moving expense reimbursements. Sterling, 03-266 at 9, 856 So.2d at 130.

. Mr. Hargrave argues an employee with annual and sick leave benefits in effect has a higher hourly wage than an employee making an identical wage but without such benefits, as the employee with benefits is paid for time he or she does not actually work. He suggests this analysis demonstrates accrued benefits have a tangible value. We do not dispute accrued annual and sick leave benefits may have some value. However, we have deter *1108 mined the legislature has decided to include only benefits which are actually taxed, not potentially taxable benefits. The broader policy question of whether potentially taxable benefits should be included in the calculation of average weekly wage addresses itself to the legislature, not the courts.